Good morning. Illinois Appellate Court, First District Court is now in session. The Fourth Division, the Honorable Justice Jesse G. Reyes presiding. Case number 21-1286, Rabbi Potek v. City of Chicago. Thank you, Mr. Schaffer. Good morning, ladies and gentlemen. Would councils who are going to be arguing this case this morning please identify yourselves to the record and then the party that you are representing. Good morning, Your Honor. My name is Ben Swetland. I represent the plaintiff appellants. Okay. Good morning, Your Honor. Patrick Morales Doyle on behalf of the City of Chicago. Okay. All right. Good morning. So 15 minutes a piece. Appellant, you want some time for rebuttal? Sure. I'll reserve three minutes, please. Three minutes. Okay. All right. You ready to proceed? I'm ready. All right. Let's proceed. Good morning, Your Honors. Again, I am Ben Swetland on behalf of the plaintiff appellants. May it please the court. The primary issue before the court today is whether plaintiffs have standing to challenge the Department of Administrative Hearings jurisdiction over the subject matter of their alleged distracted driving ordinance offenses. The answer is simple. They do have standing. The reason is simple. When a court lacks legal authority to accept a fine or collect it from someone, that is an injury. When a court lacks any legal authority to enter a judgment against a person, that is an injury. This well-established simple principle of law is supported by many, many decisions of our Supreme and appellate courts, from Sarkissian to Daniels, People v. Price, all of which hold that every last act of a court that lacks a subject matter jurisdiction is null and void. It never happens. Let me ask you a question before we proceed any further. With regards to the other two clients, we'll get to that, but there's one gentleman, I believe, who never appeared, never contested, and actually I believe to this day still hasn't paid any fine or any penalty at all with regards to this violation. So can you address why does this particular individual compared to the other two have standing here? Sure. Because he's subject. He's got this sort of Damocles of an as-yet-uncollected judgment hanging over his head with interest that is now north of $700. The city in its brief says, well, we've temporarily put him on a collection hold and we've decided that at least for now, we won't try and collect on that yet. But that's just completely the city's discretionary act, all on its own, that it can reverse as soon as this court announces its opinion. So Mr. Sequeira and everybody else plainly has standing to challenge the void judgment that should never be enforced against them. Okay. All right. You may proceed. So those acts constitute injuries to Plaintiff Sequeira and all of the other plaintiffs that is supported by the cases I just discussed, which all state that every act of a court that acts without jurisdiction is void admonitio. The circuit court wrongly rejected that well-established rule and charted a new path with respect to subject matter jurisdiction. It held as apparently the first court in the country to hold that when challenging subject matter jurisdiction, you can't just challenge subject matter jurisdiction. You also have to allege that the court that lacks subject matter jurisdiction was also unfair or less procedurally advantageous than the court that actually had the power to hear the case. There's no authority for this holding. The court doesn't cite any authority. The city in its brief cites no authority for this holding. It cites some cases that involve due process challenges, but not one that involves a challenge to a court's jurisdiction like the one in this case. The circuit court was wrong. Again, the cases I mentioned show that you can challenge a court's subject matter jurisdiction at any time in any court directly or collaterally without procedural restraint. In fact, if you don't raise it, the court has an independent duty to reach the issue all on its own to respond to it. The court below erred because it did not meet that duty. It never reached the question of the department's jurisdiction. It invented a new procedural restraint on challenges to subject matter jurisdiction and ignored plaintiff's right to make a collateral rather than a direct attack on the department's May I interrupt? I don't know if you're throwing off the gist of what the trial court judge did. Whether or not you agree or disagree or whether we agree or disagree, the question in her mind was the element of standing dealing with fairly traceable or whatever that standard is. She took the allegations of your complaint and found that there wasn't that causation. She really didn't go on this great mission regarding subject matter jurisdiction, which you seem to be presenting in your briefs and here today. The question in her mind was did the plaintiffs based on the allegations in their complaint meet that element of standing? And that's the issue. Respectfully, the issue and you can look, for example, to paragraph 106 of our complaint where we say from the beginning, everything the department did, every acceptance of a plea of guilty, every collection of a fine was void. I agree that the circuit court did not squarely address the department's subject matter jurisdiction. That was its error. Instead, I agree the circuit court said, well, I'm going to assume that had the plaintiff not filed in the department, I'm sorry, the city not filed in the department, it would have filed in the circuit court. That's not a permissible assumption in American law. Every plaintiff is required to file in a court that actually has jurisdiction to hear the case. And that didn't happen here. I think you can see the circuit court's error from the first line of its final order. Look at the appendix at one. The court says the question raised by this case is where the city should have gone to or where it should have sent its ticket, the department or the circuit court. Respectfully, that is not the issue in this case. The question is not where the city should have gone. The only question is where did the city actually go? It only ever filed administrative notices of violation in the department. Those were void. The department couldn't hear the case. And so its collection of debt, in spite of that lack of that power, its issuance of judgments, in spite of a lack of authority to do that, is a direct injury to the plaintiff. It's not just traceable. They're two sides of the same coin. The department had no right to correct fines, and yet fines were paid. The department had no right to issue the judgments, yet they were issued and entered. So with respect to the circuit court, I think it was unfortunately persuaded by the city to sort of miss the jurisdictional horse for the tree, and unfortunately spent more time thinking about tickets, which in some cases we can think about tickets in a colloquial sense. This isn't one of those cases. All that was ever filed in any court was an administrative notice of violation filed in the department. So... Also, if I could just interrupt you, and I'm sorry, my throat is hurting, and so I'm talking as loud as I can. But let's assume for the purposes of argument that every plaintiff did have standing. There were alternate grounds presented by the city why your case should still be dismissed, and they made a distinction between the 2012 tickets and the 2014 tickets, and addressed them in different fashions. Can you, in the time that you have, deal with the alternate grounds, assuming for the sake of argument that there was standing? I'd be happy to. Thank you. So moving to similarity. First off, I'll note the city repeatedly in its briefs tries to describe the 2010 statute as only a texting while driving statute. That is incorrect. The plain text of the statute provides that it covers composing, sending, and receiving all electronic messages, and subsection A of the 2010 statute defines electronic message to include, but is not limited to, yes, text messaging, also emailing, also instant messaging, and crucially, any command or request to access an internet site. So if you're scrolling on Facebook, you're in violation of the statute just like you would be the ordinance. If you get an Instagram alert from your phone and you check it, you're in violation. If you're using your weather.com application, you're in violation of both laws at the same time. In fact, most phone calls are treated the same way under both laws. Both laws have exceptions for hand-free speakerphone phone calls. So the majority of conduct is going to be treated the same under both laws. So they're similar. You would say they're more similar than they're different. I'll also say on similarity, the city makes the argument that actually the General Assembly intended this outcome. The General Assembly passed a law saying that distracted driving is dangerous and it should be reported. But if it happens in the city of Chicago, it's okay if it doesn't get reported by that geographical accident alone. That can't be what the General Assembly intended in 6-204. We know that can't be what it intended because in 6-20482, there are a list of exceptions, offenses that even if they're similar, don't have to be reported. That includes numerous sections of the Chicago Municipal Code. So the General Assembly knows how to carve out an exception for an ordinance. If it wants to, it didn't in this case. The statute is silent about anything to do with reporting. CART makes no exception for the ordinance. There's nothing in the legislative history where anyone says, well, we're okay with this not being reported. And 6-204 could have been amended, but wasn't. So it's playing what the General Assembly's intent was here. I'll discuss voluntary payment as well. There's no voluntary payment here. The plaintiffs had a really tough choice to make. They could pay $100 and proceed with their collateral attack, which all the cases say they were entitled to do. Or they could have gone to the department as the city insists that they must have done with a direct attack. Once there, 100% guaranteed they were going to lose. Because under the Chicago Municipal Code, 9-100-060, you're not allowed to make anything but factual arguments at the department, which after all is what the department is for, right? The kinds of complicated statutory interpretation arguments that have been made in this case belong in the circuit court, not the department. So you're going to lose. And having lost, the record shows you're then subject to a $500 fine. That's not voluntary, right? The city can't make people run the gauntlet of a guaranteed loss at the department and at the risk of a fine five times higher, and then say, if people instead knuckle under and just pay the $100, that that's a voluntary choice. That's not a free choice. And so there's just no voluntary payment here. The city also- Is there evidence in the record about why the plaintiffs who paid did so? Yes, absolutely. Plaintiff Potek, for example, says that it was the best choice for him. Given just exactly that sort of Sophie's choice that was in front of him. So yes, absolutely. And then some of them also admit to the violation? Well, certainly we don't challenge the merits of the case. The challenge here is to the department's authority to hear the case in the first place. And the circuit court never even reached that issue, which is by itself reversible error. Let me ask this question about the voluntary payment. So if they're in front of the DOAH or circuit court, the amount due in owing, whether the violation is challenged or not, is it different? The city certainly comes forth and says that it's going to be higher in the circuit court. But the problem with that argument is, number one, you have to assume, which you can't assume, that the city would have filed in the right court if it hadn't filed in the wrong one. And the evidence shows, in fact, the record shows that the city would not have done that. Because in 2015, when the city finally has to abandon administrative adjudication of this pages 11 and 12 of our opening brief, the city completely abandons enforcement of the ordinance and goes from something like 45,000 plus tickets a year being adjudicated administratively down to only 168 just two years later. So the record shows, and the city, by the way, never addresses this anywhere in its brief. The record shows that no, plaintiffs would never have been pulled over in the first place had the city not been improperly adjudicating this violation type. And that's what the record shows. And there's just no response to it. And that brings me, I think, ties into the unjust enrichment angle. I'm happy to answer any, assuming that answers your question, hopefully not wrongly. But Norton should be our guide here on the unjust enrichment count. In that case, this court held that when a fine is illegal, it's illegal. And in that case, there was no dispute that the persons involved had violated the traffic laws, but still restitution had to be made. Because you're not allowed to take money you're not allowed to take. And that's what subject matter jurisdiction is all about. That's what the heart of this case is about. The city knowingly circumvented our state's reporting regime for the purpose of money. And again, we outline all of this at pages 11 and 12 of our brief. But it's also telling to me on unjust enrichment. The city cites the Graham case and says, you've got to look at the totality of the circumstances. Well, on that point, the city's right. But it never accounts for its misconduct with respect to this program. Remember, going back to 2008, right in subsection D of the ordinance, it says, if this becomes reportable under 6-204, if the General Assembly passes a similar law, we cannot administratively adjudicate this. So the city knows even before the law is passed, that this case is coming. It's inevitable. And in 2010, the statute is passed, but the city keeps on going. 2014, the statute is amended to the point now, even the city admits that there's similarity. But the city keeps on going. It's only in 2015, when on advice of counsel, meaning the city got a legal opinion. The city says, we've got to stop. We've got to stop administratively adjudicating these tickets. We've got a jurisdictional problem. But the city still kept going and continued to collect on the as yet unpaid ticket. It had gotten judgments on in the department, despite knowing that there was a jurisdictional defect there. And it took some $3.2 million from its own citizens when it knew that those judgments were unsound, because its lawyers had told it that they were unsound. And I think you could get 100 people on the street, and 100 of them would tell you that that's unjust. And the city never even respond to those inconvenient facts in its brief. So how do we know the city's lawyers informed the city that they should cease and desist on this? Well, they said, because they literally say, and again, this is at page pages, I think it's 12 of our brief, it might be 11. And I apologize. But in an answer to an interrogatory, the city says, the reason we stopped administratively adjudicating the ordinance, just like plaintiffs say they should have, is because we did it on advice of counsel. So of course, we don't have the actual opinion. I'm sure we'll see it. But that's how we know it was. Was that not part of the federal lawsuit that took place? No. No. No, not, we don't have any information on that. No, perhaps it was. We don't have the communication itself. So it's possible that it's somehow tied in. But the bottom line is that the city stopped administratively adjudicating this ordinance, which is exactly plaintiff's claim in the case, but it continued to take the plaintiff's money. And I think, so that's unjust enrichment. And I guess I'll finish with impari delicto, which is the city's final ground for alternate affirmance of the circuit court's ruling. And I'll just say, this is not an impari delicto case. If you look at the cases, they involve just absolutely outrageous misconduct. The gun case, which is the divorce case. He tries to hide assets from his spouse by transferring them to his friends, and the friend won't give them back, and he sues. The Mets case, the woman steals some $1,000 bills, settles a case related to the theft and pays the settlement in the same $1,000 bills and sues her lawyer for saying, why didn't you tell me not to do that? Outrageous misconduct that far exceeds the type that we see in this case. Nobody should violate the traffic laws, they're important. In fact, this case shows why it's important, that they shouldn't be misused for the purpose of generating revenue. But nothing here arises to that level. And there's something else that's true about the impari delicto cases. They all involve a sort of recruitment of the court to accomplish the end of the scheme, right? The gun plaintiff can't finish his scheme to hide assets in the divorce until the court goes along and requires his friend to give the coin collection back. The only party in this appeal that is trying to recruit the court as an accomplice is the city of Chicago, which, according to the history we just detailed, has knowingly circumvented our state reporting regime for years, has knowingly collected on debts it knows are deficient. And it's asking this court to bless that misconduct. And this court shouldn't do that. What plaintiffs are doing is what this court has directed parties to do in cases like Cook v. Burnett. We are trying to correct a void order, which goes to the heart of our system as a whole. And if these kinds of void orders are allowed to stand, it will have a corrosive effect on the rule of law as a whole, far worse than any uncomfortable outcome in any one-off case. So for that reason, this is not an impari delicto case. For that reason, we ask this court to reverse the circuit court and hold the plaintiffs to have standing. Any questions from the panel? Nothing further. Thank you, counsel. No? OK. Thank you, counsel. All right. Mr. Doyle? Your Honor, may it please the court, Patrick Morales-Doyle on behalf of the city of Chicago. I heard a lot of merits arguments in counsel's presentation. What I didn't hear is any argument about how the only claim in this case, which is about the city's choice of forum, harmed or prejudicially affected any one of these four plaintiffs. And for that reason, they each lack standing. Well, let me ask you a question. Counsel argues that, you know, once you get the violation, you either have the right to contest it. And if you don't contest it, at the other end, you get a default entered against you. And either way, you end up paying a fine or a fee or whatever. So how is that not standing when you want to contest whether or not this should have been presented before the DOH or whatever it's called? Yes, Your Honor, because none of these plaintiffs did contest. The issue here, the complaint they have is that the city was sending people who wanted to contest their tickets to the wrong forum, that they were sending them to the Department of Administrative Hearings, but they should have been sending them to the Traffic Division of Circuit Court. Because none of them chose to contest their tickets, their claimed injury is not fairly traceable back to that decision, which is the only thing they complain about, is that choice of forum. In a nutshell, that's it. That's why they don't lack. That's why they lack standing. Somebody else could have standing, but not these four plaintiffs, not to bring the claim they brought. Hypothetically, who could have had standing here? Somebody who chose to contest their ticket, perhaps, may have an argument that the city's choice of forum caused their injury, but these four plaintiffs do not. In addition to another point that Your Honor pointed out, three of the four admitted they committed the violations, and I've heard counsel say that they don't dispute that any of them actually committed the violations. That's another reason they lack standing, and we addressed that at the very end of our standing argument. There's a recent Gress case from the Northern District. There's a Tenth Circuit case, and they basically say the same thing. If you admit you did the thing, then you don't have standing to complain about it later. So I think that's a separate reason in addition to the fact that none of these plaintiffs contested their violations for why they lack standing. Just to sort of set the record, make the record clear, I want to just touch on a quick handful of undisputed facts. Each of the four plaintiffs was pulled over by a city police officer, each who's issued a ticket for violating the city's ordinance for using their cell phone while driving. Each of the tickets gave the person an option. You can send in a check to the Department of Revenue, not the Department of Administrative Revenue, or you can contest your ticket. You can contest your violation at the Department of Administrative Hearings. Each of these four plaintiffs chose not to contest their violation. So years later, plaintiff's counsel identified an interesting legal question. Was the city in compliance with state law when it directed people to DOAH rather than the circuit court if they wanted to contest their violations? And the plaintiffs have arguments for why the choice of form was incorrect. And despite plaintiff's assertions, false assertions in their brief, the city has arguments for why the choice of form was proper. But that question was not decided below, and it's not the issue on appeal. Now, why is that? It's because you need to have more than a lawyer and an interesting legal theory to maintain a lawsuit. There needs to be a plaintiff with standing to raise the issue. And to have standing, a plaintiff must have been prejudicially affected by the thing that they're complaining about. The opposing counsel raised the issue of the first line of Judge Meyerson's order, and I think it's absolutely correct. She identified the merits issue here, which is what's the proper choice of form. And she did not get to that because none of these plaintiffs have standing to do it. But hold on. But everybody, I think, except for Sequeira, paid the violation, correct? Correct. So even if you just talk about out-of-pocket expense, paying the violation, aren't they prejudiced here? Because they still had to succumb to the dictates of the department, because the department says, you either come in and you contest this, and if you don't, then we're going to enter a default against you, and you're going to end up paying. And some of them just voluntarily paid, not realizing that they shouldn't have been paying to the Department of Revenue, and they should have maybe done something else. And so aren't they prejudiced here? No, Your Honor. I'm happy to give you my reason why. Okay. The reason why, what I think Your Honor is getting at is the injury element of standing, and whether somebody may have an injury. And that's how they got past standing on the motion to dismiss. They said, hey, we're out money. That must be an injury. Well, you raised the argument about prejudice, that they're not prejudiced. And so explain to me why aren't they prejudiced here? They're not prejudiced because the injury they're claiming doesn't trace back, isn't fairly traceable back to the thing they're complaining about. It's a causation issue. When we think about causation, whether it's standing or whether it's in a tort case or whatever, it's about but for. But for the thing I'm complaining about, where would I have been? But for the city's choice of forum, the plaintiffs would have been in the same case. They still would have received the ticket from the police officer. They still would have been obligated to pay a fine. In fact, the only evidence in the record is that if the city had chosen the other forum, the circuit court, they all would have been worse off than they actually were. They don't have a harm traceable back to the thing they're complaining about. The harm they have is traceable back to the fact that they were using their cell phones while driving and a police officer saw them, pulled them over, issued them a ticket. That's where their harm is coming from. It's not from the choice of forum. For that reason, I think the circuit court's reasoning and opinion was exactly right. We're not going to reach the issue of subject matter jurisdiction or any of the other new arguments they've raised on appeal about the merits of their case. We have to see if these plaintiffs have standing to raise it and they can't show that causal link between the thing they're complaining about and the injury they claim they've suffered. I'll just go to Mr. Potek as one example. He broke the law. He was using his cell phone while he was driving on a city street. A police officer saw him do that, pulled him over. He admits he broke the law. He admits he was using his cell phone while driving and it was against the law. He testified. I asked him, why did you pay? He said, it's the easier option. He said, it's the easier choice. It was the path of least resistance. He understood he could contest his ticket. He understood he could go to DOAH and contest his ticket. He could hire a lawyer if he wanted to. He understood that he could appeal from the Department of Administrative Hearings to the circuit court. So this idea of being limited in the defenses you could raise is incorrect because they raised whatever issues they wanted to. So he was aware of all of that. So why did he pay? Well, one, he probably paid because he committed the violation and he knew he committed the violation. He didn't have an actual defense to the violation of the ordinance. And two, it was easier for him to do so, which is separate and apart from standing, is a quintessential example of the voluntary payment doctrine. Because that doctrine asks, they have to prove an exception to that doctrine, which would be duress. And what duress looks at is, did you have another option? Clearly, he clearly testified, I knew I had another option. I could contest the ticket. It was just easier for me to pay. So everything, and there was no contrary evidence for the other plaintiffs who paid. So the voluntary payment doctrine also bars the claims for unjust enrichment brought by those three plaintiffs, which is Mr. Potek, Ms. Klein, and Mr. McElhaney. Let me ask you a question with regards, particularly with regards to Mr. Potek. So ultimately, he ends up having a order entered against him. And I believe the specific caption of it is findings, decision, and order. So even though he's not present, isn't there still a finding by a department hearing that adjudicating one way or another, whether he committed a violation and therefore should pay the fine? Even though he's not present, there's still an adjudication? No, I wouldn't characterize it that way, Your Honor. Mr. Potek, he received his ticket. He sent in a check, or maybe he paid online, weeks before his hearing at DOH was scheduled. So he paid beforehand. After the fact, DOH sent that document you called the findings, decisions, and order. They mailed it to him. And what does it say? It says he owes zero dollars. It's a case-closing document. It says, you no longer owe anything on your ticket. You paid. So what I think is important is to clarify that this isn't a case about void judgments. There's no judgment that has been enforced ever against any one of these four plaintiffs. There's no judgment at risk of being enforced against any one of these four plaintiffs. If that findings, decisions, and order paper, if it never existed, it wouldn't make a shred of... If it never existed, or if it went away tomorrow, it wouldn't make a shred of difference for any of these four plaintiffs. It came after the fact for the people who paid. And the city, before the case began, said it's not enforcing any of those for those whom had never paid, like Mr. Sequeira. So it's not a case about a void judgment. That's a red herring to try to get around the plaintiff's standing problems. Their chief argument below, and I think it's their primary argument here on standing, is because you claim something's void, or you claim this other body lacked subject matter jurisdiction, it gets you out of standing. But there's no case that supports that. Standing is an issue of justice ability. It's about whether you get to the merits of the case. So if you don't have standing, you never get to that. I do want to clarify quickly, based on what was in the reply brief that was incorrect, the city has never conceded that DOAH lacked subject matter jurisdiction at any time. 2014 or otherwise. The reason that issue is on appeal is that one of the alternative arguments the city made that attacked two of the tickets, Mr. Sequeira's and Ms. Klein's from 2012, was that they couldn't prove a necessary part of their case, which was the existence of a similar state law at the time they were pulled over. And by raising that argument, the city didn't waive other arguments it might have if the case proceeded to trial. You don't waive defenses by not raising them on summary judgment. So that should be rejected out of hand. The city hasn't conceded anything. The court didn't decide the merits of the dispute. What about counsel's reference to the interrogatory? Where the city supposedly admits that based on the advice of counsel. Um, yeah, well, I think that goes to the point in why this question, it's another example of how the question that plaintiffs want to pursue in this case is an abstract legal question. This thing they're complaining about, the city stopped doing two years before this lawsuit was filed. The city started adjudicating these violations in the Circuit Court of Cook County. And as Justice Roper mentioned, there was a claim raised by another plaintiff in another case that got at this issue. So as your honors are aware, sometimes governments, sometimes corporations, when something gets raised, they decide for whatever reason, it might be a good reason to stop. It doesn't mean they've conceded they were doing anything wrong, but sometimes you want to avoid a future lawsuit or something else. It's not an admission of liability. It's not an admission they did anything wrong, but it just goes to show that this is an abstract question that's not, it's not current. It never happened. I do want to touch on a related issue and that's Mr. Sequeira and whether he had injury because he's a little different because he didn't ever pay his ticket. The causation issue is the same because his claim is the same and he can't show his injury, which is a fear of future payment, is causally linked to the thing he's complaining about, which is the choice of forum. But he has another problem, which is he has no actual injury because his injury has to be some fear about having to pay in the future, but that's pure speculation. So in our brief, we cited cases that explain that if you're standing is based on fear of future injury, it can't be speculative. It has to be immediate. You're in immediate danger of suffering this injury. Clearly, that's not the case here. He violated the law in 2012. He's never paid. The city stopped before this case began, changed its policy in 2017 before the case was filed and said, we're not going to make any collection efforts on these. So clearly there's no immediate and hasn't. So there's no immediate harm at all at risk for Mr. Sequeira. It's purely speculative. It's not worth the time of the courts to try that case. Now, in response, in their reply brief, plaintiffs cite a case, and it's called Cohen v. Citicorp, and it gets at this doctrine called the voluntary cessation doctrine. Excuse me. And they say, well, just because a defendant voluntarily theses a practice doesn't make the issue moot. But that case is clearly distinguishable, and I'm going to direct the court's attention, if it pleases, to a case called Hanna v. City of Chicago, and that's 382 Illap 3rd 672. It's from the first district in 2008, and it distinguishes the Cohen case that plaintiffs cite, and it distinguishes in a couple ways. First of all, reiterating the voluntary cessation doctrine doesn't apply when there's not a chance of recurring. The thing that we're complaining about recurring. Here, there's no chance of the thing they're complaining about recurring. The actual practice of sending these violations to DOH stopped 2015, two years before the lawsuit was filed. Any collection actions stopped 2017, before the case was filed. So there's no chance of recurring. But even more importantly, what Hanna v. City of Chicago says is the voluntary cessation doctrine just doesn't work the same when you're talking about a governmental defendant. So essentially, in that case, the plaintiff had a zoning challenge, and before, during litigation, the property was rezoned to the way he wanted it to. And he said, no, but wait, the city can just go and rezone it again. So I do have a case. And the court said, no, it's not going to recur. But then it also said the doctrine doesn't apply the same way to governmental bodies like the city. When the defendant is a government, greater stock is placed in their acts of self-correction. So that doctrine doesn't apply here. And it, again, just reiterates that Mr. Sequeira not only can't show causation, but doesn't have an actual injury. The city, whatever risk, was eliminated before the lawsuit began. I'd touch on, if I have time, briefly the other alternative defenses that the city raised. And I guess I'd talk very quickly about the similarity argument since that was addressed. The city raised that argument as to two of the five tickets at issue in the case. And it's a very simple argument. If the plaintiff's case proceeded to trial, they'd have to prove, part of what they'd have to prove is that there was a state law that was similar to the city law. And before January 1, 2014, there wasn't. We can talk about websites and everything else. But the plain matter is, from 2005, the city banned all use of cell phones while driving. The state legislature didn't ban talking on your cell phone until driving, until 2014. That was a conscious choice. The legislature, and we have the legislative history in the record, was aware of the city's law. I think the city was one of the first places in the country to impose such a law. And they elected, they actually turned down a bill, it was voted down, that would have extended the state violation to cover talking on a cell phone while driving. Now, that's important because that means the city wasn't barred from administratively adjudicating those violations. And Mr. Sequeira is a perfect example. Mr. Sequeira in 2012 was driving down from Evanston into the city of Chicago. The police officer pulled him over. And if you look at Mr. Sequeira's ticket in the record, what the officer wrote on the ticket is that he was, quote, operating a motor vehicle in the city of Chicago while talking on a cellular phone being held in his left hand. He was talking on the phone like this. That was illegal in the city of Chicago. It wasn't illegal in the rest of the state of Illinois. So for that reason, the city was not required to send that ticket to state court to adjudicate. It could adjudicate that violation in its Department of Administrative Violations. Voluntary Payment Doctrine, I think I went through. Mr. Potek's a quintessential example of where there is not dress. The cases, we've distinguished the cases. Most of the times the courts reach this doctrine, it's on a motion to dismiss. This was on summary judgment. The evidence was undisputed. None of these people paid under dress. They all had a choice. They chose to pay voluntarily. And you can start wrapping up. Yeah, I don't think I need to address it. I'll give two sentences to the unjust enrichment in Perry delicto. Unjust enrichment requires. If you want to recover, you have to show it would violate the fundamental principles of justice, equity and good conscience for the city to keep its money. It's not. It doesn't do that for the city to keep money for violations that these people admit they committed. And the in Perry delicto doctrine is the same thing. I addressed the court to the McCormick decision where the person wasn't allowed to recover for parking tickets. So it's not just some sort of serious violation when your cause of action, when your claim for relief arises out of your own illegal conduct, even if it's parking tickets, or a dangerous violation to drive while you're using your cell phone, the doctrine applies. And so that bars those claims. If the court doesn't have any further questions, thank you for your time. And the city of Chicago would ask the court to affirm. Any questions from the panel? Again, this is Justice Lampkin. I got thrown off the Internet. Amazingly, I have two computers sitting next to me. My office computer threw me off. My cheap little iPad I was able to get back on. So I didn't hear all of your argument, Mr. Doyle. But I certainly will listen to the tapes before making a decision. Thank you. Mr. Bradford. No. Okay. All right. Thank you, Mr. Doyle. Mr. Swetland, you got three minutes rebuttal. Very good. I'll be brief. I'll begin with Mr. Sequeira. I'll note the record only shows that he's on collection hold, which is a discretionary status that the city decided all on its own to put him on and can decide all on its own to take him off. And if that's all it took to take away a plaintiff's standing, we wouldn't have any cases in the circuit court. It would be easy as pie for anybody who had any suspicion of incoming litigation to say, well, let's put him on collection hold. That way we've got a bulletproof standing argument. That can't be true. And it's also contradicted by the federal Supreme Court's decision in the Plains Commerce Bank decision where the Supreme Court said the bank was injured by the tribal court's exercise of jurisdiction over the claim. Those injuries can be remedied by a ruling in favor of the bank that the tribal court lacked jurisdiction and that the judgment on the claim is null and void. So he absolutely has standing to vacate a judgment that can be enforced up against him at any time. I'll move on to the other. I mean, the target of your complaint and what your what your allegations are and subject matter jurisdiction is that there's void judgments. But the plaintiff, the plaintiffs that pay. There there is clear indication on these orders that are entered, whatever they may be, that says zero is 0. So what possible harm are they subject to? Even if these things were enforceable, there's no collection that needs to be done or enforced. Because the collection already occurred. And you'll see it right on the back of the ANOV. You can find it at the Supplemental Common Law Record at 44. Payment serves as final disposition of the violation. So that's an act, a judgment by the department. As soon as it accepts that money, the department couldn't do that. It's null and void. It means nothing. And that means, by the way. And you're challenging only the judgments. No, that's not true. To clarify, all acts of the department are void because the department had no jurisdiction and courts exercise their jurisdiction without entering judgments all the time. And so to accept a plea of guilty, we set the McCarty case. You can't do that if you don't have jurisdiction. We don't want to have a rule in this country where courts without jurisdiction can accept pleas of guilty so that people can go plead guilty to crime in friendly jurisdiction. Maybe they know the prosecutor and they think that it's more advantageous to them to plead guilty there. And I'll caution this court. The one thing I didn't hear counsel say is that there's any precedent for this order. He didn't say anything about that. I think he should have or would have. If this court is the first to hold that subject matter jurisdiction requires allegations of procedural unfairness, what happens next? Where else does this go? Can I, in a car accident that happens in Illinois, sue someone in Iowa? And when the defendant says, you don't have jurisdiction, I say, well, please assume if I hadn't filed here, I would have filed in the right place. And after all, Your Honor, you're just as fair as the Illinois courts. Where does this go? Can the Department of Administrative Hearings begin to hear DUI cases, cases that absolutely I think we disagree as to how the issue is framed. Well, perhaps the issue goes to the choice of forum question. Plaintiffs do not challenge and cannot challenge a decision that was made in a conference room with the Department of Law, where the city arrived at its strategy for prosecuting this ordinance. Only a plaintiff or here in this case, respondent in a case can only challenge the proceedings that have been instituted against them. And here, that's what they do. They challenge the administrative notices violation that were void, that the department never had any right to accept, couldn't set hearings, much less accept pleas of guilty. It couldn't do that. And that's what plaintiffs challenge. And to create a new requirement that you not only challenge the pleadings against you, but challenge some pre-existing decision about what your litigation strategy is going to be. Well, now nobody will have standing because nobody's going to be able to challenge that kind of thing. So I would suggest that if the city can start administratively adjudicating these violation types, and thousands of people who should have been reported to the Secretary of State go unreported, what violation type is next? We live in a city the mayor has admitted is addicted to revenue from fines and fees. And the thing about being an addict is you can't stop yourself. So what's next? Will it be speeding? Will it be DUIs? What offense type that absolutely should be reported to the Secretary of State won't be reported because of the holding of Potec v. City of Chicago, which says subject matter jurisdiction isn't really subject matter jurisdiction as long as you can allege that. Well, it's all the same anyway. That also goes to the ability of the people of the state of Illinois to limit the authority of the Department of Administrative Hearings. Regardless... Mr. Swetland, why don't you start wrapping up, okay? Sure. And I'm nearly finished. Regardless of what a court says. Because subject matter jurisdiction goes to the core of our system of law, the limits placed on tribunals, placed on them by the people in a democracy. So on that note, unless there are any other questions, I'll be happy to conclude. Thank you so much. Any questions from the panel? No. Okay, all right. Thank you, counsels, for a well-argued matter and a very interesting issue. We will take it under advisement and be rendering a decision shortly. That concludes this hearing and the court is adjourned. Thank you again.